**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **VICTOR TORRES-ALMODOVAR &  ELEUTERIO SEDA-TORRES**, Plaintiffs, v. **ROBERTO RAMIREZ-KURTZ**, *et al.*, Defendants. | Civil No. 17-1315 (BJM) |

## OPINION AND ORDER

Victor Torres-Almodovar and Eleuterio Seda-Torres ("Plaintiffs") brought this § 1983 action against Roberto Ramirez-Kurtz ("Ramirez") personally and in his official capacity as the Mayor of the Municipality of Cabo Rojo, Anissa Bonilla-Irizarry ("Bonilla") personally and in her capacity as the Human Resources Interim Director of the City of Cabo Rojo, Luis A. Matias-Mercado ("Matias") personally and in his capacity as Director of Citizen Services for the City of Cabo Rojo, Elvin Arroyo-Cardoza ("Arroyo") personally and in his capacity as Director of the Elderly Center for the City of Cabo Rojo, and the Municipality of Cabo Rojo, alleging political discrimination in violation of the First and Fourteenth Amendments, 42 U.S.C. § 1983, and Article II of the Constitution of the Commonwealth of Puerto Rico. Plaintiffs seek both an injunction voiding their interdepartmental transfers and compensatory damages. Dkt. 1, ¶¶ 4–5 ("Compl."). Claims against unnamed members of the government of the Municipality of Cabo Rojo were terminated on August 21, 2017. Dkt. 14. Defendants moved for summary judgment, Dkt. 24, and Plaintiffs opposed. Dkt. 33. Defendants replied. Dkt. 34. The case is before me on consent of the parties. Dkt. 17.

For the following reasons, the motion is **GRANTED.**

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[1] submissions.[2]

Torres and Seda are both heavy equipment drivers and career employees of the Municipality of Cabo Rojo. SUF ¶ 1. Torres began working for the Municipality in 2000 or 2001. OSF ¶ 1. Seda began working for the Municipality in 1996 and was appointed a career service employee in 1998. OSF ¶ 2. Torres and Seda have fulfilled their responsibilities as municipal employees, and neither has had complaints filed against him. OSF ¶ 16. Prior to the November 2016 election, Seda worked at the Elderly Center and Torres worked at the Department of Citizens' Affairs. OSF ¶ 17. Arroyo supervised Seda in his capacity as the director of the Elderly Center, a role he assumed in late 2013 and held until retirement in 2018. OSF ¶ 8. Matias serves as the Director of Citizens' Affairs and has held that post since early 2013. OSF ¶ 10. Bonilla runs the Department of Human Resources and has held her position as director since 2015. OSF ¶ 6. Ramirez took office as mayor in January 2013. OSF ¶ 2

Arroyo, Bonilla, Matias, and Ramirez are all members of the Popular Democratic Party ("PDP"). OSF ¶¶ 7, 9, 11, 5. Ramirez also serves as president of the PDP's Cabo Rojo chapter. OSF ¶ 5. Torres and Seda are both members of the New Progressive Party

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are both uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, also with record support, paragraph by paragraph. *Id.* at 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). When the moving party replies to the opposition to a motion for summary judgment, that reply must include a statement of material facts limited to those submitted by the opposing party. D.P.R. Civ. R. 56(d). While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

[2] Defendants' statement of uncontested material facts ("SUF"), Dkt. 24-1, and Plaintiffs' opposing statement of material facts ("OSF"), Dkt. 33-1.

("NPP"). OSF ¶ 2. Arroyo learned that Seda was affiliated with the NPP at some point before November 22, 2016. OSF ¶ 13. Bonilla knew that Torres was affiliated with the NPP. OSF ¶ 14. Matias knew that both Torres and Seda were affiliated with the NPP. OSF ¶ 15. Ramirez knew that both Torres and Seda were affiliated with the NPP. OSF ¶ 12.

During the November 2016 election campaign, Torres and Seda actively supported Jorge Morales Wiscovitch, the NPP candidate who ran for mayor against incumbent Ramirez. OSF ¶ 5. Torres and Seda participated in walkabouts, acted as ward leaders, and worked as polling officers for the election. OSF ¶¶ 3–4. Ramirez was re-elected as mayor on November 8, 2016. OSF ¶ 4.

Shortly after, on November 22, 2016, Ramirez decided to transfer Torres and Seda to different jobs within the municipal government. OSF ¶ 18. Bonilla, Director of Human Resources, consulted on the transfers and signed the transfer letters. OSF ¶¶ 17, 18. Ramirez transferred Torres from his position as a heavy equipment driver at the Department of Citizens' Affairs to the same position at the Elderly Center, where he fulfilled some of Seda's former responsibilities. OSF ¶ 17; SUF ¶ 5. Ramirez transferred Seda from his position as a heavy equipment driver at the Elderly Center to the same position at the Department of Recycling. OSF ¶ 17. Although Torres and Seda had experienced transfers before, those had occurred at their request and before Ramirez became mayor in 2013. SUF ¶ 2. After the November 2016 transfer, both Torres and Seda continued to perform the same duties as drivers. SUF ¶ 6, 7. The transfer itself did not bother Torres but rather the perceived political motivations behind the transfer perturbed him. SUF ¶ 9. Likewise, Seda contends that the reasons underlying the transfer, rather than the transfer itself, bother him. SUF ¶ 8; Dkt. 33-3 19:21–23 ("Seda Dep.").

Torres felt demeaned by the transfer. Dkt. 33-3 at 108:12–13 ("Torres Dep."). It removed him from the close-knit Citizens Affairs' environment and disrupted his home life. Torres Dep. 108:25–109:6. Torres also lost the per diem he received when he worked outside of the local area because Elderly Center drivers do not travel far enough to merit a

per diem. *Id.* at 109:7–12. The vehicle assigned to Torres to drive has a broken air conditioner; he reported the problem to Arroyo, who is charged with managing municipal vehicles, but nothing has been done to fix it. *Id*. at 102:10–12, 106:18–20, 107:10–108:5. Seda "felt like a low-level employee after his transfer." Seda Dep. 51:3. He attributes his divorce to the transfer's impact on his marriage. *Id.* at 51:3–4. The new position at the Recycling Center required him to start and end work four hours later, so Seda lost his extra part-time job. *Id.* at 54:2–11.

Torres and Seda contend that Ramirez transferred them as political retribution, which Defendants dispute. Plaintiffs rely, in part, on statements made by municipal personnel during the election and Arroyo's statement that he had heard changes would be coming after the 2016 election. OSF ¶ 19. After the election, Torres and Seda contend that other municipal employees mocked their NPP allegiances and warned them that they would be punished for supporting Ramirez's opponent. Dkt. 33 at 10. Plaintiffs also contend that their seniority should have protected them from involuntary transfers but do not offer facts or evidence supporting that type of system or custom.[3]

## DISCUSSION

Plaintiffs contend that Ramirez ordered their respective transfers purely due to their political affiliations. Compl. ¶ 4. Defendants contend that Plaintiffs cannot, as a matter of law, meet their burden because there is no evidence that the transfers constitute adverse employment actions. Dkt. 24 at 7–8.

**Political Discrimination**

"To the victor belong only those spoils that may be constitutionally obtained." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990). The First Amendment protects government employees who are not in policymaking positions of confidence from adverse

---

[3] Plaintiffs requested a variety of information regarding transfers and heavy equipment drivers in the Recycling Department from Bonilla at her deposition on March 9, 201, and have yet to receive it. Dkt. 33 at 9n.1.

employment decisions based on their political affiliations. *Borges Colon v. Roman-Abreu*, 438 F.3d 1, 14 (1st Cir. 2006). Section 1983 "is the conventional vehicle through which relief is sought for claims of political discrimination by state actors." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

A plaintiff seeking to establish a prima facie case of political discrimination must establish four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011) (quoting *Lamboy–Ortiz v. Ortiz–Vélez*, 630 F.3d 228, 239 (1st Cir. 2010)). That burden satisfied, "the burden then shifts to the defendants to show that "(i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." *Vélez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 152 (1st Cir. 2006) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–87 (1977)). The defendant must persuade the factfinder that it would have made the same decision even if the illegitimate reason had not been a factor. *See Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008); *Padilla-García v. Guillermo Rodriguez*, 212 F.3d 69, 77–78 (1st Cir. 2000).

Plaintiffs easily satisfy the first two elements. The parties agree that Plaintiffs, NPP members, and Defendants, PDP members, have opposing political affiliations. OSF ¶¶ 7, 9, 11, 5. Defendants Ramirez, Bonilla, and Matias all knew Torres's political affiliation before the transfer on November 22, 2016. OSF ¶¶ 12–15. Defendants Ramirez, Arroyo, and Matias all knew Seda's political affiliation before the transfer on November 22, 2016. *Id.* Plaintiffs stumble, however, on the third element, establishing that the transfer from one department to another constituted an adverse employment action.

"[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the

Torres-Almodovar v. Ramirez-Kurtz, et. al., Civil No. 17-1315 (BJM)                                  7

nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Defendants do just that, pointing to the absence of any materially adverse employment action. Dkt. 34 at 2. An adverse employment action is analyzed objectively, on a case-by-case basis. *Garmon v. AMTRAK*, 844 F.3d 307, 314 (1st Cir. 2016) (citing *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996)). Generally, though, an employer must take or withhold something significant from an employee, such as reducing his salary or responsibilities, or diverge from custom, such as when employees are traditionally considered for promotion. *Blackie*, 75 F.3d at 725. A mere inconvenience or change in responsibilities does not rise to the level of a materially adverse employment action. *Garmon*, 844 F.3d at 314 (citing *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010)). Employment actions are adverse under § 1983 when they make the employee's new position "'unreasonably inferior' to the norm for the position" and pressure the employee to bow to political pressure. *See Reyes-Orta v. P.R. Highway & Transp. Auth.*, 811 F.3d 67, 76 (1st Cir. 2010) (quoting *Agosto-de-Feliciano v. Aponte-Roque*, 889 F.2d 1209, 1218 (1st Cir. 1989) (en banc)).

In the briefs supporting and opposing the instant motion for summary judgment, neither Torres nor Seda assert facts demonstrating that their new assignments were "unreasonably inferior" to their former assignments or to the position of any other heavy equipment drivers. *See generally*, Dkt. 33. The transfers, the only adverse employment actions Plaintiffs allege, had no effect on their titles, salaries, or responsibilities. *See Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 32 (1st Cir. 2010). Plaintiffs even admit that they perform the same duties as they did before the transfer. SUF ¶¶ 6–7; Dkt. 33-1 at 2. Indeed, the only significant changes outside of the department assignments are to peripheral benefits Plaintiffs enjoyed. The main difference in Torres's job is losing his tight-knit community at the Citizens' Affairs Department and the per diem that accompanies the long drives that position entailed. Torres Dep. at 108:25–109:6, 109:7–12. Torres also had to drive a van with broken air conditioning. 102:10–12. Seda's new schedule required him to quit his outside, part-time job. Seda Dep. 54:2–11. Though surely

inconvenient, *Agosto-de-Feliciano* explicitly excludes loss of perks from satisfying the "unreasonably inferior" standard. *Agosto-de-Feliciano*, 889 F.2d at 1219. Torres's van with a broken air conditioner might generously be compared to an undesirable office space, but that alone is not "sufficiently severe" to carry Torres' burden of proof. *Id.* at 1220.

Plaintiffs assert that less senior drivers could and should have been transferred in each case, demonstrating a divergence from custom. *Id.* at 1219; *Blackie*, 75 F.3d at 725. They note in their opposition brief that they requested and have not received human resources records regarding transfers and assignments of heavy equipment drivers, the Recycling Department's drivers, and other municipal employees. Dkt. 33 at 9 n.1. Be that as it may, Plaintiffs never moved the court to compel productions of such records, nor do they request relief under Federal Rule of Civil Procedure 56(d). Defendants contend that the transfer was within Ramirez's discretion regardless of seniority because more "qualified" drivers were needed in Recycling. Dkt. 34-1 at 4. Neither party has chosen to introduce the missing portion of Ramirez's deposition that might clarify this matter. In a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party and make all reasonable inferences in its favor. *Griggs-Ryan*, 904 F.2d at 115. This indulgence is balanced by the non-moving party's burden to show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Assuming municipal custom dictated that Ramirez transfer junior heavy equipment drivers first, a reasonable jury would not agree that these specific transfers constituted adverse employment actions because Plaintiffs' titles, responsibilities, and salaries, did not change. When analyzing transfers of career employees, merely ignoring seniority is not sufficient to qualify as adverse employment action. *See Cruz-Baez v. Negron-Irizarry*, 360 F. Supp. 2d 326 (D.P.R. 2005) (three career employees survived summary judgment because new jobs with significantly reduced salaries constituted "unreasonably inferior" positions). There must be something more that makes the new position inferior. *Id.*

"Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Blackie*, 75 F.3d at 725. Plaintiffs feel demeaned by the transfers, and both contend that the transfers adversely impacted their respective marriages. Torres Dep. 108:12–13; Seda Dep. 51:3–4. Torres stated at his deposition that he took issue with the perceived politics, not the transfer. "I believe… like I say here, that I work wherever they send me, but what I see in this case, and I repeat it and I stress it, is that this was because of politics and that it happened during the electoral ban." Torres Dep. 86:23–87:1. Seda agreed: "The transfer itself didn't bother me. What bothered me was the reason for the transfer." Seda Dep. 20:21–23. Neither their sentiments nor their marriage troubles make the transfer adverse or the new positions "unreasonably inferior" work situation because they are extraneous to the new jobs. *See Ayala-Sepulveda*, 671 F.3d at 32. Subjective feelings are immaterial in an objective inquiry, yet Plaintiffs' indifference to the transfers explains the reason for the scanty facts offered to support the action's adversity. Whether viewed subjectively or objectively, their transfers were mere inconveniences in comparison to the political insults that Plaintiffs feel they suffered. Political insults from colleagues might worsen working conditions, but the inquiry focuses on "whether *new work conditions* would place substantial pressure on even one of thick skin to conform to the prevailing political view." *Agosto-de-Feliciano*, 889 F.2d at 1218 (emphasis added). As stated, Plaintiffs' working conditions have remained substantially the same with only the perks of longer drives and an early clock-out time.

Plaintiffs cannot establish a case of political discrimination under § 1983 without demonstrating that Defendants took adverse employment action against them. *See Ocasio–Hernández*, 640 F.3d at 13. Based on the facts before the court, no such action was taken. Accordingly, there is no genuine dispute of material facts over whether the transfers constitute a materially adverse employment action under the law, and the motion for summary judgment should be granted.

**Remaining Claims**

The complaint also alleges various state-law claims. Compl. ¶ 7. Because summary judgment is proper on Plaintiffs' federal claims, I decline to exercise jurisdiction over his ancillary state-law claims, and so they are dismissed. 28 U.S.C. § 1367(c).

## CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED**. All federal claims against all the defendants are **DISMISSED WITH PREJUDICE**, and all state-law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of November 2018.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge